Lawrence A. Barrett, Successor Liquidating Trustee for Madison-Kedzie Trust and Savings Bank, Appellant, v. Alice Shanks, Administratrix of Estate of Mark Shanks, Deceased, Appellee.

Gen. No. 41,122.

Opinion filed March 18, 1942. Rehearing denied April 1, 1942.

WILLIAM H. DILLON, RUDOLPH F. BOSTELMAN and AUSTIN G. RIGNEY, all of Chicago, for appellant.

GUSTAV E. BEERLY, of Chicago, for appellee; JOHN F. DIFFENDERFFER, JR., MAURICE J. COSTELLO and GUSTAV E. BEERLY, JR., all of Chicago, of counsel.

REHEARING OPINION.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action in assumpsit upon the guaranty of Mark Shanks, deceased, hereinafter called the defendant. The action was commenced prior to the effective date of the Civil Practice Act. The trial court directed a verdict for defendant, judgment was entered thereon October 21, 1939, and plaintiff has appealed.

There was a prior appeal in this case. In the original trial plaintiff had summary judgment and the defendant appealed to this court. The judgment was reversed here and the cause was remanded for a trial on the merits.

The record shows that on April 11, 1927, the defendant and several other persons signed a written guaranty of obligations of the Midwest Athletic Club of Chicago, Illinios, owing to the Madison-Kedzie State Bank, also of Chicago. The guaranty contained the following limitation:

"This guarantee applies to and covers specially and only a loan of Seventy Five Thousand Dollars $75,000 made this date or any renewal in whole or in part." Defendant's guaranty obligation was limited to $5,000.

The guaranty was executed simultaneously with the promissory note of the Club for $75,000, payable to the Madison-Kedzie State Bank and with an assignment by

the Club of certain of its accounts receivable to the defendant, his co-guarantors and the said bank.

Upon delivery of the note, assignment and guaranty to Madison-Kedzie State Bank, a loan of $75,000 was made to the Club. On September 12, 1930, the Club renewed the loan for the balance then due and executed a sixty day promissory note for $50,000. Thereafter the Madison-Kedzie State Bank endorsed and delivered said last note to the Madison-Kedzie Trust & Savings Bank, the original plaintiff hereinafter referred to as the Bank, and assigned to it the contract of guaranty.

On October 25, 1930, the sum of $3,080 was paid by the Club on its note, but thereafter default was made in payment of the balance. Subsequently, demand was made upon Mark Shanks for payment of his proportion of the guaranty obligation. He refused to pay. This suit was filed and Shanks filed a plea of non-assumpsit, an affidavit of meritorious defense and a notice of special matters to be relied upon for defense. The defenses in the latter two pleadings mentioned are substantially the same and state that the defendant was induced to sign the guaranty by collusion, fraudulent and false representations. The defendant also alleges therein that it was represented to him that the Club had net assets of more than $500,000; that its liabilities were not in excess of $25,000; that guarantors of the Club's obligation to Foreman & Co. for $250,000 were released; that the Club had not borrowed money for which it had pledged as security its membership accounts receivable. The defendant further alleges that the Madison-Kedzie State Bank accepted as security for the principal indebtedness of the Club all of its accounts receivable for unpaid memberships due or to become due after March 31, 1927, until the note was paid; that such pledge was accepted contemporaneously with the guaranty; that the pledge gave the said assignor power to ask, demand, collect, receive, compound and give acquittance for the accounts.

The pleadings of the defendant then charge that the Bank's assignor collected and received a sum from said accounts sufficient to discharge the Club's debt and by reason thereof he was discharged from his guaranty obligation; that the pledge was an indemnity and that the pledgee did not manage and collect the collateral properly and diligently but wasted it and that he was thereby caused a loss; that the Club paid more than sufficient to extinguish its principal debt; that the renewals of the debt were made without his knowledge and acquiescence and after the death of one or more of his co-guarantors; and, finally, that plaintiff is not a *bona fide* owner of the guaranty sued upon.

The original declaration was filed in the name of Madison-Kedzie Trust & Savings Bank, a corporation, against Mark Shanks. Subsequently, on July 8, 1937, Lawrence A. Barrett, as successor liquidating trustee of the Bank, was substituted as plaintiff by order of court. Mark Shanks, the original defendant, died following this appeal, his death was suggested in the record in this court and Alice E. Shanks, administratrix of his estate, was substituted as defendant.

An amended declaration was filed by Barrett. The additional allegations covered the appointment of a receiver for the Bank, the receiver's possession of the note herein; that the receiver became liquidating trustee; that the receiver died and that plaintiff Barrett was named successor liquidating trustee; that Barrett as such trustee is now the *bona fide* owner and holder of the note. The amended declaration also states the amount unpaid and due on the note as $46,920. To this amended declaration also the defendant filed a plea of non-assumpsit, an affidavit of defense and a notice of special matters of defense, which pleadings are the same as defendant's original pleadings. Under the pleadings, filed by the parties in addition to proof of the instruments involved, proof was made without dispute that the accounts receivable of the Club had been as-

signed as security for the note; that those accounts were collected by the Club in an amount sufficient to pay the note; that the Club deposited the proceeds collected in its checking account with the Bank; that the proceeds so deposited were withdrawn by the Club, applied to construction costs and not applied in payment of the note; that the Club withdrew these funds from its checking account for the purpose of paying for its new Club building then under construction; and that the defendant guarantor as the Vice President and a Director of the Club made no objections to these transactions.

The trial court also, over objection of the plaintiff, admitted testimony offered by the defendant to prove that the guaranty and assignment were executed in contemplation of an application by the Bank of the proceeds of the collateral to payment of the obligations secured. At the close of the evidence the trial court out of the presence of the jury heard arguments of counsel and thereupon directed the jury to find for defendant. The verdict was returned on October 11, 1939 and on October 21, the trial court denied the motions of plaintiff for judgment notwithstanding the verdict and for a new trial and entered judgment on the verdict for the defendant.

The trial court in directing the verdict referring to the assignment, stated: ". . . and I find these to be the salient and essential words of that document—'until such note for $75,000, or any renewal of the whole or any part thereof, shall have been fully paid.' " The trial court further stated that the assignment was "the dominating memorandum" in the case under which Smith, as Treasurer of the Midwest Athletic Club and as President of the Madison & Kedzie State Bank, was bound to apply the proceeds of the accounts receivable in liquidation of the loan. The trial court also found that as a matter of law the guarantors could not be held liable. Plaintiff contends that the trial

court did not construe the language correctly and that the correct interpretation of the provisions of the assignment clearly imposed no obligation upon the Bank to so apply the proceeds of the collateral assigned. Defendant argues that the provisions of the instruments here are ambiguous and that parol evidence admitted sustains the ruling of the trial court.

The pertinent language of the assignment with the disputed clause in italics, is: ". . . the . . . Club . . . in order to secure payment of its note for Seventy Five Thousand ($75,000.00) Dollars, . . . does hereby assign to Mark Shanks, . . . and to the Madison & Kedzie State Bank . . . all the accounts receivable . . . of the Club . . . being for unpaid memberships due or to become due after March 31, 1927, . . . or *until such note for Seventy Five Thousand ($75,000.00) Dollars, or any renewal of the whole or any part thereof, shall have been fully paid. . . .*" The disputed clause standing alone is meaningless. It depends on other language. A study of the above pertinent language of the assignment in which the clause appears will readily disclose that it modifies either "assign" in the principal clause or the words "due" in the phrase which commences, "being for unpaid memberships, etc." There is no other alternative. The only reasonable arrangements of these sentence elements, are, therefore, as follows: ". . . the . . . Club . . . does hereby assign . . . accounts receivable . . . until such note . . . shall have been fully paid." and ". . . the . . . Club . . . does hereby assign accounts receivable . . . being for unpaid memberships due or to become due after March 31, 1927, . . . or 'until such note . . . shall have been fully paid.'" The first alternative disregards the word "or" which precedes "until." That word should be given effect, if possible. It is given effect in the second alternative. We are, therefore, con-

strained to conclude that the clause in dispute modifies the words "due" in the manner set forth in the second alternative. The clause, properly construed, accordingly established a limit of time beyond which accruing accounts receivable were not to be assigned.

We must now decide the meaning of the entire sentence in the light of our conclusion as to the proper function of the clause discussed above. To arrive at the meaning we must, if we can, determine from the language, why the accounts receivable were assigned. The trial court has decided and the defendant contends that the accounts were assigned to be collected by the Bank and paid by it on the note. Plaintiff insists that they were to be neither collected nor applied by the Bank, but held by it only as collateral to the Club's obligation to pay its note. The assignment reads: ". . . the Club . . . in order *to secure* payment of its note . . . does hereby assign, etc."

It is clear from that, the words "to secure" control the reason for the assignment. The word "secure" is defined (Webster's New International Dictionary, 2d Ed.) in the sense used here, as follows:

"To give adequate pledge of payment to (a creditor) of or an (obligation)." The word "pledge" as a noun is defined in the same dictionary in the sense used here, as:

"A chattel or object of personal property, delivered by a debtor or obligor to a creditor or obligee to be kept by the latter until the debt or obligation is satisfied." To attain the meaning for which the defendant strives, would require that we refuse to give effect to the meaning of the word "secure." We hold that the assignment was not made *in payment* or *for payment* of the note, but as collateral to be kept by the Bank until the Club paid the note. We are of the opinion that the trial court did not correctly construe the instrument. We believe the assignment is unambiguous;

and that by it, accounts receivable—accruing after March 31, 1927, and up to the time the Club paid its note,—were assigned as collateral to secure such payment. It is clear from the undisputed evidence of the actions of the several parties involved in this transaction, that they, themselves, construed the instrument as we have.

The trial court erred in admitting parol evidence in aid of the interpretation of the instruments involved in the proceeding. The language of each instrument is clear and the two are not inconsistent or repugnant, as will readily appear from a comparison of the provisions of the assignment hereinbefore set forth with those of the guaranty, which follows: ". . . the liability hereunder shall in no wise be affected or impaired by . . . any sale, pledge, surrender, compromise, release, renewal, extension, indulgence, alteration, exchange, change in or modification of any of said indebtedness, . . . or any security or collateral therefor. . . . *Said Bank shall have the exclusive right to determine how, when and what application of payments and credits . . . shall be made on said indebtedness. . . . In order to hold the Guarantors liable hereunder there shall be no necessity or duty on the part of said Bank to resort at any time for payment to said Debtor . . . or to any collateral or security . . . whatsoever. . . .* All diligence in collection . . . and notice . . . of default and of non-payment of any note, . . . are hereby expressly waived." These conclusions make it unnecessary to consider the various points and authorities which have to do with rules of construction of several ambiguous instruments involved in the transaction.

The undisputed facts in the record set forth hereinabove dispose of further contentions of the defendant that the Bank was not diligent in collecting, and was wasteful in wrongfully misapplying, the proceeds of

the account; and that the Bank by misapplying such proceeds diminished the indemnity, in the form of the accounts, of the guarantors. Those facts show that the Club, and not the Bank, withdrew the proceeds from the Club bank account and applied the same to its construction costs. It seems obvious the Bank could not have been guilty of the charges made, and the contentions of the defendant, therefore, cannot be sustained. These considerations also dispose of the question whether the defendant waived his right to object to a misapplication of the funds; and whether, once the Bank assumed to apply the proceeds, its application was limited to the purpose of the assignment. We have decided as a matter of law that there was no obligation on the Bank to so apply the proceeds and that the facts show no such application was made.

The defendant contends that the plaintiff has shifted his position in this court from that occupied by him in the trial court. The record shows that the plaintiff argued the precise question in the trial court that he urges here. The defendant further contends that the original guaranty was not produced at the trial nor its absence accounted for; and that plaintiff is not a *bona fide* holder of the guaranty. The record discloses that a photostatic copy of the guaranty was admitted in evidence by agreement of the parties and that proof of plaintiff's possession of the instrument is not controverted. Finally, the defendant's answer to plaintiff's petition for rehearing urges that the cause should be retried on the question of fraud in procuring the guaranty. That question is one which this court held in its prior appeal was made an issue of fact by the pleadings. There is no evidence of fraud in the record. Plaintiff apparently abandoned this issue at the trial. The question is not properly presented here.

For the reasons herein given the judgment is reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff and against

the defendant Alice Shanks, as administratrix of the estate of Mark Shanks, for $4,265.98, such judgment to be paid in due course of administration.

*Judgment reversed and cause remanded with directions to enter judgment for $4,265.98.*

BURKE, P. J., and HEBEL, J., concur.