**John S. Dasher, Appellant, v. Joseph Bruno et al., Appellees.**

**Gen. No. 46,515.**

First District, Second Division.

April 6, 1955.

Released for publication May 23, 1955.

Bernard B. Brody, and William Vihon, both of Chicago, for plaintiff-appellant; William Vihon, of Chicago, of counsel.

Hyland J. Paullin, of Chicago, for appellees.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action brought by the seller, plaintiff John S. Dasher, against defendant Joseph Bruno as the buyer, to foreclose an alleged equitable lien on certain shares of stock and the dividends thereon which are the subject matter of their written contract, to have the proceeds of sale under decree applied to plaintiff's claim for the due and unpaid balance of the purchase price and to have a decree for the deficiency, if any. There is also a prayer for general relief.

The court dismissed the plaintiff's amended and supplemental complaint for want of equity. He appeals.

There are two important questions raised by the plaintiff on appeal. The first is whether the contract provides that plaintiff's sole remedy for the defendant's default in payments of monthly installments is

the return to the plaintiff of "one share of said stock for each . . . $100 . . . of unpaid principal and interest," as contended for by the defendant. The second question is whether the contract expressly creates an equitable lien in favor of the plaintiff.

The facts relevant to an understanding and a determination of these questions are that on October 19, 1952, plaintiff and defendant Bruno entered into a contract for the sale of 300 shares of the capital stock of Bruno Appliance Sales & Service, Inc., the corporate defendant. The contract was the result of dissension among the incorporators and stockholders of the corporate defendant, Dasher, Frank, Joseph and Art Bruno, each of whom owned 300 of the 1,200 shares of the corporate defendant's capital stock (par value of $100 each). Defendant Bruno offered to buy Frank's and plaintiff's shares, offering each $30,000. Defendant Bruno paid Frank in cash. With plaintiff, however, he entered into the contract in issue. The contract provides for a purchase price of $30,000, payable beginning December 1, 1952, on or before the 1st of "each and every month thereafter until the entire purchase price has been paid, together with interest at the rate of five percent [sic] . . . per annum on the deferred balance remaining unpaid from time to time, . . . payable monthly with each installment of principal." Defendant made eight payments, totaling $8,000, plus the agreed interest, the last on July 1, 1953. On September 29, 1953, H. J. Paullin, escrowee of the stock certificate to whom defendant made the payments which were remitted to plaintiff, notified plaintiff that defendant was in default and stated plaintiff was entitled to receive a new certificate for 220 shares, "all in accordance with the provisions of said agreement." Paullin, as escrowee, who is also defendant Bruno's attorney, and who drafted the contract, was joined as a party defendant in plaintiff's original complaint. He was dismissed after the stock certificate was by

agreement of the parties delivered to and placed in a joint order escrow with Chicago Title & Trust Company, as escrowee.

Additional relevant portions of the contract read as follows:

"2. JOHN S. DASHER concurrently with the execution of this Agreement shall assign, transfer, set over and deliver to JOSEPH BRUNO said three hundred (300) shares of capital stock so sold, and shall execute and deliver his resignation as director and secretary of said Corporation.

"3. To secure the payment of the balance of the purchase price, said JOSEPH BRUNO does hereby deposit with H. J. PAULLIN in escrow the said three hundred (300) shares of stock so purchased by him, endorsed by him in blank, to be held by said escrowee until the full purchase price has been paid and upon the payment of the full purchase price, said three hundred (300) shares of stock shall be returned to said JOSEPH BRUNO; that said JOSEPH BRUNO shall, until default, have the right to vote said shares of stock and to receive any and all dividends which may be declared, paid or be applicable to said three hundred (300) shares of stock so purchased by him. If JOSEPH BRUNO makes default in the payment of the purchase price, or the interest thereon, then said JOHN S. DASHER shall be entitled to receive one share of said stock for each One Hundred Dollars ($100) of unpaid principal and interest."

It is the contention of the defendant that by the last sentence of paragraph 3, plaintiff is provided an exclusive remedy for defendant's default. We cannot agree. The words of that sentence, "shall be entitled to," are words not of limitation or imposition (Meehan v. Jones (D. C. Minn.), 70 F. 453, 455; Norton v. State, 104 Wash. 248, 254, 176 Pac. 347, 349), but are words of right, privilege and power implying a choice (Robertson v. Northern R. R., 63 N. H. 544, 548,

504

3 Atl. 621, 623; Reed v. Union Bank of Winchester, Va., 29 Grat. 719, 723). We find no contrary authority. We are not here concerned with the character of the remedy provided by the last sentence of paragraph 3. It may provide a subject for much speculation or interpretation. It is sufficient, and we so conclude, that plaintiff by that sentence was granted the right to choose the remedy there provided or to reject it. The right was not given to the defendant. Plaintiff elected not to exercise this right but to enforce another. This was proper. (Ruddock v. American Medical Ass'n, 415 Ill. 63, 72.) If the remedy, so-called by defendant, were to be enforced, defendant would have only to default after payment of the first or several subsequent installments, and meanwhile enjoy the right to vote the entire 300 shares of stock, to receive all dividends declared on the 300 shares of stock, and finally realize majority control of the corporate defendant. In return, defendant would merely be required to tender plaintiff the balance of the unappropriated shares, each presumably retaining its original value. Plaintiff, who under the contract also gave up his rights of office in the corporate defendant, one or both of which presumably were salaried positions, would be penalized for defendant's default, and defendant, thus eliminating his obligations under the contract, would profit by his own default. Defendant's position is manifestly unsound. (Cf. Ruddock v. American Medical Ass'n, supra.)

██ As to the second contention of the defendant that paragraph 3 does not create an equitable lien on the 300 shares in favor of the plaintiff, so as to give him the right of foreclosure and all other rights incidental thereto, we do not agree. In Byron v. Byron, 391 Ill. 256, 262, it is said that " 'whenever parties enter into an express executory agreement in writing indicating an intention to make some particular property, real or personal, or a fund, security for a debt or other

obligation, there is created an equitable lien on the property described in such contract which is enforcible in the hands of the original contractor, and also his heirs, administrators, executors, voluntary assignees, purchasers and incumbrancers with notice. (Walker v. Brown, 165 U. S. 654; 10 R. C. L. sec. 100.) An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a jus in re or a jus ad rem; neither a debt nor a right of property, but a remedy for a debt.'

". . . 'It is simply a right of a special nature over the thing which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree, and its proceeds in one· case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists.' " See also Aldrich v. R. J. Ederer Co., 302 Ill. 391, 395–6; Kukuk v. Martin, 331 Ill. 602, 605–6.

 A stock certificate sufficiently describes specific property to which equitable rights may attach. (Lewis v. Braun, 356 Ill. 467.) Defendant argues, however, that the deposit provided in sentence one of paragraph 3 merely secures his default duty to return the shares under the formula provided in sentence two. This contention cannot be sustained. The deposit stipulated in sentence one secures "the payment of the balance of the purchase price. . . ." Only by a perversion of the plain meaning of that language could we construe it to mean that the deposit secures return of the shares under the formula provided in sentence two. Plaintiff is a secured creditor, if the words "To secure," etc., are to be given any meaning. (See Trustees of Zion Methodist Church v. Smith, 335 Ill. App. 233; Harney v. Colwell, 314 Ill. App. 173; and cf. Barrett v. Shanks, 313 Ill. App. 598.) But it becomes necessary to inquire into the nature of his rights with re-

506

spect to his security. He is neither a pledgee nor the holder of a seller's lien, as these are customarily conceived, for his rights, whatever they may be, are not dependent on possession. Nor is he in the usual sense a conditional seller, for he has not retained title to his security. He is not a chattel mortgagee, for the contract under which he holds lacks not only the appropriate language but also the particular form customarily creating such an interest, besides the requisite acknowledgment. Moreover, although not important in determining rights between buyer and seller, but bearing on their intention, the contract is not recorded. If the plaintiff is none of these things but is nevertheless a secured creditor, we are compelled to conclude that he is the holder of an equitable lien. The contract provides that defendant shall have the right to vote the shares and receive dividends declared thereon. In effect his enjoyment and use of the property was nearly as great as those of any owner. He promised in return to satisfy the purchase price at agreed intervals and to pay interest on the deferred balance. The entire transaction assumes the character of a chattel mortgage securing a loan of money. We are of the opinion that the interest created in plaintiff under the contract is an equitable lien which he has the right to foreclose in equity.

▪ Defendant Joseph Bruno next contends that plaintiff's prayer for judgment in the amount of $22,000 plus 5 per cent interest from July 1, 1953, proceeds upon the theory of anticipatory breach which defendant contends is not applicable in a case such as the one at bar, where complete performance has been given by one party and it remains with the other party only to pay installments of money. There is a plethora of authority supporting this general rule. (Marshall v. John Grosse Clothing Co., 184 Ill. 421; Commercial Casualty Ins. Co. of Newark v. Campfield, 243 Ill. App. 453; Williston on Contracts (rev. ed. 1936) secs. 1290,

1328, 2024; Rest., Contracts, sec. 318.) However, we do not feel called upon to decide its application to the facts in the case at bar. Plaintiff's prayer is in the alternative, for $22,000 plus 5 per cent interest from July 1, 1953, or for the installments due since August 1, 1953, plus interest. The final installment under the contract is due May 1, 1955. It is reasonably certain that a decree in this cause will not be entered earlier than May 1, 1955, and that, therefore, plaintiff will, in effect, be granted his first prayer in the form of his alternative prayer for installments due and unpaid plus interest.

■■ A final contention is made by the corporate defendant, Bruno Appliance Sales & Service, Inc., that as to it the amended and supplemental complaint was correctly dismissed since it is neither a necessary nor a proper party to these proceedings. We do not agree. One of the functions of equity is to grant complete relief, as nearly as is possible and feasible, in one proceeding. Defendant Joseph Bruno controls the closely held corporate defendant. It will be necessary, after foreclosure sale, to transfer the stock to a purchaser and issue one or more new stock certificates, to enjoin or direct payment of any dividends declared on the shares, and to execute any additional orders entered by the court pertaining to stockholders' rights and corporate obligations.

The order of the trial court dismissing plaintiff's amended and supplemental complaint for want of equity and dismissing the corporate defendant Bruno Appliance Sales & Service, Inc. is reversed and the cause remanded to the trial court with directions that defendants Joseph Bruno and the Bruno Appliance Sales & Service, Inc. be ordered to answer the amended and supplemental complaint and for such other and further action as is consistent with our opinion.

Order reversed and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.