NO. 4-97-0460

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

RALPH LEWSADER and VICTORIA LEWSADER, ) Appeal from

Plaintiffs-Appellees,         ) Circuit Court of 

          v. ) Champaign County

WAL-MART STORES, INC., a Delaware ) No. 93L1173

corporation, )

Defendant, )

and )

BETTYE D. KELSO, Administrator of the )

Estate of THOMAS R. KELSO, Deceased, )

Petitioner-Appellant, )

v. )

WAL-MART STORES, INC., a Delaware ) Honorable

corporation,        )    George S. Miller,

Appellee.              )    Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

Intervenor-appellant Bettye D. Kelso, administrator of  the estate of Thomas R. Kelso (Estate), appeals from a May 9, 1997, order of the circuit court of Champaign County.  The trial court found that the Estate had neither a valid statutory attorney's lien (770 ILCS 5/1 (West 1996)) nor an equitable lien in the settlement proceeds in the matter of Lewsader v. Wal-Mart Stores, Inc., herein.  The Estate has abandoned the argument that a valid statutory attorney's lien exists and now argues only that Kelso's agreement with the Lewsaders and his efforts on their behalf created an equitable lien on the settlement amount for which Wal-Mart Stores, Inc. (Wal-Mart),  is liable.  We reverse and remand to the trial court for further proceedings.

Plaintiff Ralph Lewsader was seriously injured on October 1, 1991, when he fell from a scaffold as he worked on the construc­tion of Sam's Club Discount Store in Champaign, Illinois.  On December 23, 1991, Lewsader and his wife, Victoria, retained attorney Thomas R. Kelso of the law firm of Beckett, Crewell, and Kelso to represent them in the personal injury matter.  Under the terms of the attorney-client agreements signed by Kelso and the Lewsaders on December 23, 1991, the firm was to receive "33 1/3% of any amount recovered by settlement, with or without court proceed­ings, or by final judgment of any court."  On September 20, 1993, Kelso filed a nine-count complaint on behalf of the Lewsaders in the circuit court of Champaign County naming the architect,  general contractor, and Wal-Mart, the owner of the premises, as defendants.  The contractor and Wal-Mart filed third-party complaints against Lewsader's employer for contribution.

During the pendency of this matter, the firm dissolved and Kelso formed a new firm, Kelso and Associates.   A letter dated December 19, 1993, informed the trial court that Kelso and Associ­ates then represented the Lewsaders.  No new attorney-client agreement was executed.  Kelso settled Ralph's workers' compensa­tion claim against his employer, which was dismissed by stipula­tion of all parties on May 23, 1995, and received $20,000 in legal fees for his services.  In February 1996, he settled the Lewsaders' claims with the general contractor for $300,000, for which his firm received $100,000 in fees.  The trial court entered an order granting plaintiffs' petition for a good-faith finding, pursuant to the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/1 
et
 
seq
.
 (West 1996)), over Wal-Mart's objections, on March 1, 1996.    Kelso also conducted discovery and prepared the case for trial.  The voluminous record discloses that Kelso prepared and filed many motions and supporting memoranda.  He opposed the motion for summary judgment in favor of the architect that was granted on January 14, 1994.  He filed multiple motions for partial summary judgment (August 11 and October 6, 1995, and September 4, 1996) on certain elements of the Structural Work Act (see Ill. Rev. Stat. 1991, ch. 48, par. 59.90 
et
 
seq
. (740 ILCS 150/0.01 
et
 
seq
. (West 1992))) claim.  He engaged in extensive discov­ery, including taking deposi­tions, and responded to defendants' discovery requests.  In addition, on September 23, 1995, he filed a motion and memorandum seeking to bar Wal-Mart's expert witness for failure to comply with Supreme Court Rule 220 (134 Ill. 2d R. 220).  He had repeated correspon­dence with opposing counsel regarding alleged discovery abuses and on September 11, 1995, filed a motion to compel and a motion for sanctions.  He also filed multiple motions dealing with jury instructions, use of demonstra­tive exhibits, voluntary dismissal of certain counts, and other matters.

Due to the congested condition of the trial court calendar, the November 1995 trial date was postponed.  As of March 1, 1996, Wal-Mart was the only remaining defendant.  All work done by Kelso and his firm after that date related entirely to the pending litigation against Wal-Mart.  After Wal-Mart became the sole remaining defendant, Kelso filed objections to the withdrawal of Wal-Mart's counsel and a third motion for sanctions on August 1, 1996; a motion for partial summary judgment on September 4, 1996; and successfully opposed Wal-Mart's September 11, 1996, motion to dismiss based upon the repeal of the Structural Work Act (740 ILCS 150.01 
et
 
seq
. (West 1996)).   However, the record is clear that much of the work done prior to that date related only to Wal-Mart.   Kelso died on September 29, 1996.  On October 8, 1996, the Lewsaders entered into another attorney-client agreement with the Kelso firm and, on October 9, 1996, a member of that firm responded to Wal-Mart's motion to continue the trial date from the November 1996 jury term to a later date.  The Lewsaders then retained the law firm of Johnson, Frank, Frederick, and Walsh as  counsel in this matter and, on October 10, 1996, Ralph informed the Kelso firm by letter that he was terminating their relationship with the firm.  On October 22, 1996, the Kelso firm attempted to serve notice of an attorney's lien on Wal-Mart.  

The trial was reset for May 1997, and a court-ordered settlement conference was held on April 23, 1997.  A settlement was reached.  Under the terms of the agreement, Liberty Mutual Insurance Company (Liberty Mutual), Wal-Mart's insurance carri­er, was to pay the Lewsaders $300,000 in exchange for their complete release of all claims and dismissal of the action.  On April 30, 1997, the Lewsaders filed a motion to bar the attorney's lien and, on May 8, 1997, the Estate filed a petition for leave to intervene and a petition to enforce the attorney's lien.

At the May 9, 1997, hearing, the Estate argued that Kelso was entitled to a portion of the proceeds of the settlement under two theories, a valid attorney's lien pursuant to statute (770 ILCS 5/1 (West 1996)) and an equitable lien.  The trial court ruled against the Estate on both theories and ordered that Wal-Mart and Liberty Mutual "tender the settlement check in this case payable solely to Ralph Lewsader, Victoria Lewsader and the Law Offices of JOHNSON, FRANK, FREDERICK & WALSH."  A settlement check in the amount of $300,000 was tendered by Liberty Mutual on May 15, 1997.  

MOTION TO DISMISS

We first address the September 7, 1997, motion by Wal-Mart to dismiss it from these proceedings.  Wal-Mart argues that it, through its insurance carrier, has fully complied with the valid trial court order of May 9, 1997, and that even if the Estate is successful in this appeal, Wal-Mart would not be liable for any amount awarded to the Estate.  Wal-Mart also notes that the Estate did not seek a stay of the order pending this appeal.  

In their brief, the Lewsaders offer support for this argument, stating that the entire matter is rendered moot by the disbursement of the settlement check.  Citing the decision of our supreme court in 
In re Estate of Wellman
, 174 Ill. 2d 335, 353, 673 N.E.2d 272, 280 (1996), they assert that, as a result of all settle­ment proceeds having been distributed, this court would be unable, in any event, to grant relief.  
Wellman
, however, involved an adjudica­tion of mental disability where the subject of the action died during the appeal.  The issue became moot because the individual could not have been given any effective relief after his death.  In this case, relief could be given, if it is found to be appropriate, by ordering payment by the proper party to the Estate.

In response to Wal-Mart's motion to dismiss, the Estate argues that Wal-Mart is a necessary party to this appeal because, if this court should reverse, Wal-Mart will be liable for the amount of the attorney's lien.  Under this reasoning, Wal-Mart acted "at its own peril" when it disbursed the settlement funds while the order was still subject to appeal and, thus, continues to be liable if it acted in derogation of a valid attorney's lien.  We note that Wal-Mart did not seek a stay of the order, nor did Wal-Mart pay the money to the court or post bond pending this appeal.

The Estate cites 
Process Color Plate Co. v. Chicago Urban Transportation District
, 125 Ill. App. 3d 885, 890, 466 N.E.2d 1033, 1037 (1984), for the proposition that the lienee must "stand ready to pay the lawyer that portion of the proceeds which the client agreed to pay the lawyer."  In that case, however, the petitioner attorney had properly served the defendant with notice of the lien as required by statute.  So, too, in 
Bennett v. Chicago & Eastern Illinois R.R. Co.
, 327 Ill. App. 76, 63 N.E.2d 527 (1945), and 
Case v. Emerson-Brantingham Co.
, 269 Ill. 94, 109 N.E. 671 (1915), also cited by the Estate, the petitioner attorneys had served notice on the defendants under the terms of the attorney's lien law.  The statutory lien argument failed at the trial court and is not made in this appeal.  

The Estate also asserts that if this court finds an equitable lien exists, Wal-Mart, not the Lewsaders, will be liable for the amount of that lien.  As noted above, however, all cases cited by the Estate involve statutory liens and, therefore, do not necessarily provide support for this proposition.  On the other hand, Wal-Mart has cited no authority for its conclusion that if this appeal is successful, Wal-Mart would not be required to pay any additional funds to satisfy the lien.  Because Wal-Mart has not offered any support for concluding, at this stage, that it cannot be held liable as a matter of law, the motion to dismiss is denied.

We now turn to the issues of (1) whether, as a matter of law, the estate of a deceased attorney is precluded from asserting an equitable lien when the attorney died before settle­ment; (2) whether an equitable lien was created that entitles the Estate to a portion of a settlement reached after Kelso's death; and (3) if such a lien does exist, the amount to which the estate is entitled; and (4) whether a defendant that has already tendered the agreed settle­ment amount to the client is liable for payment.

I.  AVAILABILITY OF EQUITABLE REMEDY

We note initially that a trial court has broad equitable power to grant relief when there is no adequate remedy at law.  The exercise of these equitable powers "is a matter of sound judicial discretion controlled by established principles of equity and exercised upon a consid­eration of all the facts and circumstances of a particular case."  
Omni Partners v. Down
, 246 Ill. App. 3d 57, 62, 614 N.E.2d 1342, 1346 (1993).  Thus, the decision to grant or deny equitable relief is within the sound discretion of the trial court and will not be reversed by this court absent an abuse of that discretion.
  In this case, the Estate has no adequate remedy at law because Kelso did not comply with the terms of the statutory attorney's lien provision.  770 ILCS 5/1 (West 1996).  There is no doubt that when the statutory remedy is unavailable, a trial court may use its equitable power to award fees to an attorney using equitable lien, 
quantum
 
meruit
, or other equitable device.  The equitable lien has been employed in this manner both before (
Cameron v. Boeger
, 200 Ill. 84, 65 N.E. 690 (1902)) and after (
Home Federal Savings & Loan Ass'n v. Cook
, 170 Ill. App. 3d 720, 525 N.E.2d 151 (1988)) enactment of the attorney's lien law in 1909 (1909 Ill. Laws 97, §1).  

The trial court, however, did not exercise its discretion to award or deny equitable relief to the Estate when the remedy at law, the statutory lien, was found not to be available.  Rather, the trial court specifically found that any contract that existed between the Lewsaders and Kelso was terminated by Kelso's death and further found, as a matter of law, that an equitable lien could not exist unless it were based on a contract that was still in force at the time of the settlement.  The trial court then stated,  "Now you tell me where there is a case that allows me to give you a lien against the funds after the contract has terminated due to the death of the attorney claiming the lien and I will be glad to follow that case." 
 It is this decision, and not an exercise of equitable powers, that we are asked to review.  Because the trial court ruled on the law and not on the facts of this case, we review 
de
 
novo
 the decision that there can be no lien asserted by the estate of a deceased attorney who provided services under a contingency agreement.  We find that decision to be incorrect as a matter of law.

In 1943, the Seventh Circuit Court of Appeals considered a case factually similar to this one, 
Roe v. Sears, Roebuck & Co.
, 132 F.2d 829 (7th Cir. 1943).  Attorney Roe was employed by Sears on a contingency basis to recover certain tax payments but he died in June 1934, "long prior to the recovery of any money" by Sears, although he had "performed some services."  
Roe
, 132 F.2d at 831.  Sears' eventual recovery came about not because of any efforts of Roe's, but because a subsequent act of Congress authorized the tax refund.  The court concluded:

"In Illinois, an attorney who has been employed on a contin­gent basis to collect a claim for his client and who dies before recovery by client is had, but who renders service pursuant to such contract, leaves a cause of action against the client, which survives his death.  The contract of emp
lo
y­ment is ended by the attorney's death, but his represen­tative may recover the reasonable value of the attorney's services, if client ultimately recovers on his claim."  
Roe
, 132 F.2d at 831.

Roe
 does not discuss the v
arious remedies available to the representative of the deceased attorney's estate
 and mentions a lien only in passing.  However, 
Roe
 leaves no doubt that recovery is not barred simply because an attorney dies before settlement is reached.

Roe
 was cited by the Supreme Court of Oklahoma in 1945 in a case that held a deceased attorney's statutory lien could be enforced by his estate against a settlement that had been deposited with the court clerk.  
City of Barnsdall v. Curnutt
, 198 Okla. 3, 174 P.2d 596 (1945).  Curnutt was employed on a contingency basis and had performed services at the time of his death.  Upon his death, the client employed and paid other attorneys.  The court held that "[t]he termination of the contract by death does not invalidate it for all purposes."  
Curnutt
, 198 Okla. at 7, 174 P.2d at 600.  Under the contingen­cy arrangement, Curnutt was to receive 40% of the amount recovered; he obtained a tentative settlement offer of $25,000 before his death.  The case eventually settled for $35,000.  The court gave effect to the statutory lien and awarded the Curnutt estate $10,000, or 40% of the $25,000 offer he had obtained.  Our supreme court has also cited 
Roe
 with approval (
In re Estate of Barbera
, 55 Ill. 2d 235, 237, 302 N.E.2d 302, 304 (1973) (holding that contingent fees are an asset of the partner­ship in which the estate of a deceased partner is entitled to participate)).

Aside from 
Roe
, there is other Illinois precedent for the proposition that the estate of a deceased attorney may recover contingency fees.  In 
Sullivan v. Fawver
, 58 Ill. App. 2d 37, 44, 206 N.E.2d 492, 495 (1965), the court held that even in the absence of an express contract, the estate was entitled to 25% of the settlement offer on the table at the time of the attorney's death.  The court found that this amount represented lawyer Sullivan's usual and customary fee and was reasonable compensation for his services up to the time of his death.

The Lewsaders argue, and the trial court held, that the estate of a deceased attorney cannot recover for services rendered on a contingent fee basis where the attorney died before the settlement was reached.  For this proposition, the Lewsaders cite 
In re Heirich
, 10 Ill. 2d 357, 140 N.E.2d 825 (1956).  
Heirich
, however, held only that the right to practice expires with the death of the attorney and that his pending cases thus cannot be assigned to other counsel by the representative of the estate.

We hold, in keeping with 
Roe
, that when an attorney provides services to a client under a contingency agreement, recovery of attorney fees is not barred by the death of the attorney.  We must also determine whether the specific remedy requested by the Estate, an equitable lien, is barred by Kelso's death.  Although the "practical val­ue of this rule of equi­ty in the context of attorneys' liens has been signifi­cantly diminished with the enactment of the Illinois Attorneys' Lien Act, the rule re­mains a viable one and has survived the adop­tion of the Lien Act."  
McKee-Berger-Mansueto, Inc. v. Board of Educa­tion
,
 691 F.2d 828, 835-36 (7th Cir. 1982).  Despite the dearth of recent cases on point, there is ample authority for us to conclude an equitable lien is enforceable by the successors, heirs, administra­tors, and executors of a deceased lienor.  
In re Estate of Jones
, 41 Ill. App. 2d 488, 191 N.E.2d 656 (1963) (abstract of op.) (slip op. at 5); 
Dasher v. Bruno
, 5 Ill. App. 2d 500, 506, 126 N.E.2d 404, 407 (1955); 
Harney v. Colwell
, 314 Ill. App. 173, 176, 41 N.E.2d 123, 125 (1942).  We therefore hold that if an equitable lien arose in this case, it was not extin­guished by Kelso's death.

II.  EXISTENCE OF EQUITABLE LIEN

An equitable lien is "neither a debt nor a property right; rather, it is a remedy for a debt."  
Paine/Wetzel Associ­ates, Inc. v. Gitles
, 174 Ill. App. 3d 389, 393, 528 N.E.2d 358, 360 (1988). Before a trial court may exercise its discretion to grant such a remedy, it must make certain findings of fact regarding the elements of an equitable lien:  "(1) a debt, duty, or obligation owing by one person to another, and (2) a 
res
 to which that obligation attaches."  
Paine/Wetzel
, 174 Ill. App. 3d at 393, 528 N.E.2d at 360.  Further, to find an equitable lien based on a contingency agreement, one party must have made an assignment such 

"'as gives the assignee a title which, though not cognizable at law, equity will recognize and protect.  [Citations.]  There must be an im­plied appro­priation of the fund, or of some desig­nated part, proportion or percentage of it, to act as an equitable assignment.'"  
McKee
, 691 F.2d at 836, quoting 
Lewis v. Braun
, 356 Ill. 467, 477-78, 191 N.E. 56, 61 (1934).

As this court has stated previously, an equitable lien may arise in two situations:

"First, the lien arises where the parties express in writing their intention to make real or personal proper­ty, or some fund, the security for a debt, or where there has been a promise to convey or assign property as secu­rity.  Second, equity recognizes such a lien without an express agreement between the parties, which arises wholly from general consid­erations of fairness and justice."  
Agribank, FCB v. Whitlock
, 251 Ill. App. 3d 299, 310, 621 N.E.2d 967, 975 (1993), citing 
Paine/Wetzel
, 174 Ill. App. 3d at 393, 528 N.E.2d at 360.

Other authorities suggest that in addition to creation by an express written agreement, an equitable lien may be created by an implied-in-fact contract or imposed by the court to prevent unjust enrichment.  1 D. Dobbs, Law of Remedies §4.3(3), at 600-01 (2d ed. 1993).  Another source explains:

"An equitable lien may be created by an ex­press contract which shows an intention to charge some particular property with a debt or obligation, 
or it may arise by implication
 from the relations and dealings of the parties whose interests are involved.  It may also be created by an equitable assignment of a con­tract, debt, or fund, or by a judicial de­cree."  (Emphasis added.)  51 Am. Jur. 2d 
Liens
 §25 (1970), citing, 
inter
 
alia
, 
Wil­liams v. Vanderbilt
, 145 Ill. 238, 34 N.E. 476 (1893). 

It has been said: 

"At common law in Illinois, an attorney could not acquire a lien on a judgment or on a fund recovered by means of his or her legal services unless there existed an express agreement that worked an equitable assign­ment."  
McKee
, 691 F.2d at 834.

This conclusion by the seventh circuit relied upon Illinois cases decided in 1892 and 1896 and, although it requires an express agreement, it does not require an express 
written
 agreement.  
Sullivan
, decided in 1965, clearly allows recovery of attorney fees in the 
absence
 of an express written agreement.

We are called upon here to apply and to harmonize two distinct bodies of law--that of equitable liens and that relating to attorney fees.  We are unwilling to go so far as to suggest that an equitable lien for attorney fees should be imposed by a court in the absence of an attorney-client agreement merely out of a sense of fairness.  We do find, however, in keeping with the case law of equitable liens in general, and with 
Sullivan
 in particular, that the agreement underlying an equitable lien need not be an express written agreement.

Thus, in this case, an equitable lien in favor of Kelso could have been created by the express contract signed by Kelso and the Lewsaders and, once created, would be enforceable by any successor to the contract.  
Jones
, 41 Ill. App. 2d at 488, 191 N.E.2d at 656; 
Dasher
, 5 Ill. App. 2d at 506, 126 N.E.2d at 407; 
Harney
, 314 Ill. App. at 176, 41 N.E.2d at 125.  So, too, even after the disband­ing of one law firm and the creation of another, the "relations and dealings" of the parties could have given rise to an implied agreement and an equitable lien.  Surely, had Kelso lived and seen the case to its conclusion, the lack of a second signed agreement with his new firm would not have prevented him from recovering his fees.  

The Estate argues that the existence of an equitable lien is a question of law and, thus, we may review the decision of the trial court 
de
 
novo
, citing  
Oldweiler v. Peoples Bank
, 161 Ill. App. 3d 317, 320, 514 N.E.2d 541, 543 (1987), in which this court stated that we are not bound by the trial court's findings when "the construction and legal effect of an instrument raises a question of law in the absence of any material question of fact."  The Lewsaders argue that we may not reverse the decision of the trial court unless we find an abuse of discretion, citing 
In re Estate of Callahan
, 144 Ill. 2d 32, 43-44, 578 N.E.2d 985, 990 (1991), and 
Merchandise National Bank v. Scanlon
, 86 Ill. App. 3d 719, 729, 408 N.E.2d 248, 255 (1980).  Both of these cases, however, involved an award of attorney fees and the abuse of discretion standard was applied to the trial court's determination of the amount of those fees, not to the existence of a lien.  

In the section that follows, we apply the standard announced in 
Oldweiler
 and conclude that the language of the original agreement between the Lewsaders and Beckett, Crewell and Kelso created an equitable lien at the time the agreement was made.  The additional questions--whether Kelso succeeded to that lien or equity requires recognition of a lien in favor of Kelso based on the conduct of the parties--are inquiries that must be left to the discretion of the trial court.

Whether an equitable lien is created by a contract between an attorney and a client turns "on the precise language employed in the fee agreement."  
In re Brass Kettle Restaurant, Inc.
, 790 F.2d 574, 576 (7th Cir. 1986).  Language that is "a mere personal promise by the client to pay attorneys fees in an amount equal to a specified portion of the fund to be recovered or out of the proceeds of such a fund" does not create an equitable lien.  
Brass Kettle
, 790 F.2d at 576.  In contrast, an equitable assign­ment is created by language that definitely fixes compensa­tion at a certain percent­age of the total sum collected.  
Lewis
, 356 Ill. at 477, 191 N.E. at 60-61.

A contract that requires the client to personally pay fees to the attorney "the amount of which was to be determined by what was recovered" (
Cameron
, 200 Ill. at 91, 65 N.E. at 692), does not give rise to an equitable lien.  Similarly, a client's promise to pay "an amount equal to" a certain percentage of the recovery "constituted nothing more than a personal promise to pay for legal services and did not purport to assign an equitable interest."  
Department of Public Works v. Exchange National Bank
, 93 Ill. App. 3d 390, 394, 417 N.E.2d 1045, 1048-49 (1981)
.  

The contracts signed by the Lewsaders and Kelso on December 23, 1991, contained the following provision:

"3. Client hereby agrees to pay to Attor­ney for all of the said services rendered and to be rendered by Attor­ney, the following:

(a) 33 1/3% of any amount re­covered by settle­ment, with or with­out court proceedings, or by final judgment of any court.

(b) 40% of any amount recovered after final judg­ment in court pro­ceedings after an appeal by either party.

(c)  NO FEES IN ANY AMOUNT in the event no recovery is obtained."

This language is quite similar to that in 
Cook
 (
170 Ill. App. 3d at 722, 525 N.E.2d at 153), where an agreement "to pay said attorneys a contingent fee of 40% of any monies recovered on my behalf by either settlement or jury verdict" was found to create an equitable lien.  It is also similar to the language in 
Achs v. Maddox
, 175 Ill. App. 3d 989, 994, 530 N.E.2d 612, 615 (1988), where an equitable lien was created by language indicating that the attorneys "were to look directly to the fund recovered for payment of their fees."  

The seventh circuit decisions in 
McKee
 and 
Brass Kettle
 reach the same result applying Illinois law.  In 
McKee
, the contingent fee agreement entitling the attorneys to "one-third (1/3) of any and all recoveries made on the claims by virtue of trial, settlement, or other disposition of the proposed litigation" was "decisive."  
McKee
, 691 F.2d at 837.  In 
Brass Kettle
, an agreement that the attorney would receive "Forty Percent (40%) of any recovery made in [Brass Kettle's] behalf" created a valid equitable lien on the later recovery.  
Brass Kettle
, 790 F.2d at 576.

Because the contract language in the Kelso-Lewsader agreement is virtually identical to that in 
McKee
, and because under 
Oldweiler
 the legal effect of such an instrument is a question of law, we conclude that the December 23, 1991, agreements did create an equitable lien on any amount subsequently recovered.  We note, in addition, that an equitable lien is created at the time of the underlying agreement, not when recovery is eventually had.  
Brass Kettle
, 790 F.2d at 576; 
McKee
, 691 F.2d at 837; 
Cook
, 170 Ill. App. 3d at 724, 525 N.E.2d at 154.

We have determined only that an equitable lien was created upon the signing of the December 23, 1991, agreements between the Lewsaders and the firm of Beckett, Crewell and Kelso and that Kelso's death prior to the settlement does not preclude recovery.  We remand to the trial court for consideration of whether Kelso was a successor to the lien created by the original written agreement or whether equity requires recogni­tion of a lien in favor of Kelso based on the conduct of the parties.

We will briefly address the Lewsaders' argument that the only remedy available to the Estate is 
quantum
 
meruit
.  This argument relies on the holding in 
Rhoades v. Norfolk & Western Ry.
 
Co.
, 78 Ill. 2d 217, 230, 399 N.E.2d 969, 975 (1979), where the supreme court held that an attorney who was discharged without cause could not then perfect a statutory lien but, rather, was "entitled to be paid on a 
quantum
 
meruit
 basis a reasonable fee for services rendered before discharge."  
Rhoades
 was followed in 
Public Works
 
(93 Ill. App. 3d 390, 417 N.E.2d 1045), where the attorney was fired, and in 
Kannewurf v. Johns
, 260 Ill. App. 3d 66, 632 N.E.2d 711 (1994), where the attorney withdrew from the represen­ta­tion and, thus, rescinded the contin­gency contract.  We have found no cases involving attorneys who have died during the course of the representation where the estate has been limited to the 
quantum
 
meruit
 remedy.  
Roe
, 
Sullivan
, and 
Curnutt
 suggest that the estate of a deceased attorney who rendered services under a contingency agreement may seek recovery under several theories, including equitable lien.

III.  AMOUNT OF LIEN

We also briefly address the Lewsaders' assertion that because Kelso did not procure the settlement offer from Wal-Mart, his estate is not entitled to any portion of the fee based upon that settlement.  
Sullivan
 and 
Curnutt
 do offer some support for the proposition that if the deceased attorney obtained an offer of settlement prior to his death, his estate may recover the contrac­tual percentage of that offer.  These cases do not address the present case, where the deceased attorney worked on the case for five years and did reach settlements with other parties but did not obtain an offer of settlement from the last remaining defendant.  The Lewsaders cite 
Susan E. Loggans & Associates v. Estate of Magid
, 226 Ill. App. 3d 147, 162, 589 N.E.2d 603, 612 (1992), in which the court rejected the suggestion that the contingency fee should be apportioned between the two attor­neys, the one who was fired and the one who actually procured the settlement, based upon the amount of work done by each.  
Loggans
, however, involved an attorney who was fired and was limited by 
Rhoades
 to the 
quantum
 
meruit
 remedy.  The rejection of an apportionment approach does not necessarily apply when an equitable lien is asserted.

We are faced with a case of first impression.  Is an equitable lien an all-or-nothing remedy so that the estate of a deceased attorney must be able to point to an offer on the table or to assert that he did virtually all of the work on the case in order to recover?  Or may a trial court find that a deceased attorney had an equitable lien, but that recovery of the full contingency amount is to be reduced because he died before settlement was reached?  Because it is the very nature of an equitable remedy to be flexible and to rely upon the discretion of the trial court, we hold that the trial court does have the discretion, "controlled by established principles of equity and exercised upon a consideration of all the facts and circumstances of a particular case" (
Omni Partners
, 246 Ill. App. 3d at 62, 614 N.E.2d at 1346), to find an equitable lien, but to limit the award based upon the contribution of the deceased attorney to the eventual recovery.  

IV.  LIABILITY FOR PAYMENT OF LIEN

Wal-Mart has not filed a brief in this appeal but has adopted the Lewsaders' brief. Because the interests of the Lewsaders and Wal-Mart would diverge if the trial court should find upon remand that the Estate is entitled to payment of all or part of the contingency amount, and because this determination will turn on factual issues such as notice, this issue is properly considered by the trial court if it becomes necessary.

CONCLUSION

For the foregoing reasons we reverse the decision of the trial court and remand for further proceedings.

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.