2023 IL App (1st) 211323

FIRST DISTRICT
THIRD DIVISION
September 27, 2023

No. 1-21-1323

| | |
|---|---|
| PHILIPPE LEROY and JORY VINIKOUR, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs-Appellants, | ) Cook County |
| | ) |
| v. | ) No. 15 L 11446 |
| | ) |
| ERA VALDIVIA CONTRACTORS, INC., and TRAFFIC | ) |
| CONTROL & PROTECTION, INC., | ) |
| | ) |
| Defendants | ) |
| | ) |
| (Touhy Law Group, P.C., Appellants; Nicholas Lane, Appellee). | ) Honorable |
| | ) James N. O'Hara, |
| | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred with the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Philippe Leroy and Jory Vinikour, along with Touhy Law Group, P.C. (Touhy firm), appeal the trial court's order awarding petitioner Nicholas Lane $55,000 in attorney fees, pursuant to a statutory lien. On appeal, the plaintiffs contend that Lane could not claim a statutory lien on the settlement proceeds because Leroy and Vinikour did not hire Lane to represent them. Alternatively, they argue that the trial court should have held an evidentiary hearing on Lane's petition to resolve disputed questions of fact. For the following reasons, we reverse the trial court's judgment.

¶ 2                                I. BACKGROUND

¶ 3    In 2014, Leroy was injured when he tripped over a metal stanchion protruding into a walkway. He and Vinikour, his spouse, signed a one-third contingent fee agreement with the Touhy firm for the purpose of filing a complaint for damages. On November 10, 2015, on behalf of Leroy and Vinikour, Timothy Touhy filed a complaint against ERA Valdivia Contractors, Inc., and Traffic Control & Protection, Inc., alleging counts of negligence and loss of consortium.

¶ 4    Lane was a sole practitioner who occasionally referred cases to the Touhy firm and received referral fees in return. In 2015, Lane inquired about possible work with the Touhy firm. Mr. Touhy stated in his affidavit that they agreed Lane would make court appearances and attend depositions on firm cases at a rate of $50 an hour. Lane was allowed to use an office in the firm's suite and received legal support from the firm's legal assistants. Mr. Touhy instructed Lane "to submit court status and deposition reports after each court appearance and deposition" and to document his hours.

¶ 5    The record shows that the firm paid Lane more than $100,000 in 2016 and 2017. However, the documents do not specify the work for which he was paid. Lane acknowledged that he received payment from the firm, but the checks "were never tied to any particular case, and amounted to what Mr. Touhy referred to as a form of subsistence pay." In an affidavit, Lane stated that he was not an employee of Mr. Touhy or the Touhy firm and that no written agreement existed between them regarding their professional relationship or Lane's compensation.

¶ 6    Lane "began working" on the Leroy case in March 2016. Lane met Leroy and Vinikour for the first time on September 20, 2016, when he attended Leroy's deposition and defended Vinikour's deposition. On that day, Lane gave plaintiffs his business card, which identified him as an attorney. Since the card had "distinctive features," it was "unlikely to be confused as a business

card of another law firm." It was also Lane's "custom and practice" to inform Touhy firm clients that he was not an employee of the firm. The record contains an invoice from Lane to the Touhy firm for $2800, dated September 30, 2016, for Lane's preparation and attendance of depositions in the Leroy case. The invoice indicated that Lane billed $50 per hour for this work.

¶ 7    In December 2017, opposing counsel in another case informed Mr. Touhy that Lane had served an attorney's lien on counsel's client. Two weeks later, another Touhy client told Mr. Touhy that Lane asked the client to sign a fee-sharing agreement authorizing Lane to receive a share of the recovery from the client's personal injury case. As a result of these actions, Mr. Touhy told Lane to vacate the firm's offices. In January 2019, Mr. Touhy instructed Lane not to file any document or pleading in a Touhy case without firm approval, or make appearances unless Mr. Touhy requested that he do so.

¶ 8    On January 31, 2019, Lane sent a "Notice of Attorney's Lien," pursuant to the Attorneys Lien Act (Lien Act) (770 ILCS 5/0.01 *et seq.* (West 2018)), to defendants in the Leroy case. The lien notified them that Lane was "retained as additional counsel by the Plaintiffs" and "the matter has been placed in [Lane's] hands for collection." Lane stated that his "interest in the claim is the *maximum reasonable fee* allowed in law or equity, or both, subject only to any enforceable agreement between [Lane] and [his] clients." (Emphasis in original.) On February 7, 2019, Lane filed an appearance on behalf of Leroy and Vinikour in their case.

¶ 9    In a letter dated March 25, 2019, Mr. Touhy informed Lane that Leroy and Vinikour requested that he withdraw his appearance in their case, release his attorney lien, and "take no action whatsoever in connection with *** their case." Mr. Touhy "verified with the clients that they have never authorized [Lane] to file an appearance and verified that they have never signed a written agreement in which they have consented—in writing—to pay [Lane] any kind of

contingent fee." If Lane did not release the lien or withdraw his appearance in the case "within 48 hours," the clients directed the firm to file a motion to strike Lane's appearance and lien "and take any other action necessary to correct your unauthorized conduct."

¶ 10    Lane withdrew his appearance but did not release his lien claim. Approximately two weeks later, the trial court entered an order requiring the parties to participate in mediation. Lane did not take part in the mediation. An order entered on April 23, 2019 stated that the parties had settled. The Touhy firm received its one-third contingency fee from the settlement proceeds.

¶ 11    On June 3, 2019, Lane filed a petition to adjudicate and enforce his liens. Therein, Lane averred that he was "former counsel" for Leroy and Vinikour and he sought "an order directing payment from the settlement funds obtained *** of his attorney's fees in an amount consistent with the authorites [*sic*] governing the Adjudication of Attorneys' Liens and the fundamental principles of *quantum meruit*." Lane "began representing the Plaintiffs at least as early as March 21, 2016," when he appeared for a case management conference. He asserted that because his lien notices were served by certified mail during his representation of plaintiffs, he had complied with the requirements of the Lien Act.

¶ 12    In his affidavit attached to the petition, Lane stated that he did not "remember the precise words of the conversation, but it was made clear to the clients on September 20th, 2016 that [he] would be working on their case going forward." He withdrew as counsel on March 26, 2019, "after receiving a certain document from Plaintiff's [*sic*] remaining Attorney Timothy Touhy."

¶ 13    Lane acknowledged that "[n]o written contingent fee agreement exists between [Lane] and the Plaintiffs." Therefore, if his attorney lien is valid, his fees "must be calculated on a *quantum meruit* basis." Lane attached time records detailing the unbilled work he performed in the Leroy case from March 21, 2016 to March 23, 2019, and he stated that his hourly rate in litigation matters

was $350 per hour. At that rate, his fees totaled $59,360. Lane claimed that "[t]he record illustrates the indispensable nature of the work" he performed, and "a huge portion of this case was handled by Lane exclusively." He requested an award of attorney fees in the range of $50,000 to $80,000.

¶ 14    Leroy and Vinikour filed motions objecting to the lien and seeking to strike and extinguish the lien. In their motions, they argued that Lane represented them "as an agent and fiduciary of the Touhy firm." According to their affidavits, "[a]t no time did [Leroy and Vinikour] employ or retain Nicholas Lane as an attorney to represent [them] in this litigation." They further stated that the only contingent fee agreement they signed "was with Mr. Touhy and the Touhy firm" and that "Timothy Touhy and the Touhy law firm [have] been [their] attorney throughout this litigation." They never had any discussion with Lane regarding attorney fees.

¶ 15    On June 27, 2019, the trial court adopted the findings and recommendations of the mediator. The court also scheduled a hearing on Lane's petition to enforce his lien, pursuant to the Lien Act.

¶ 16    On January 6, 2020, without an evidentiary hearing or oral argument, the trial court denied the motions to strike and extinguish Lane's lien and granted Lane's petition. The order stated only that Lane was "entitled to an attorney's fee of $55,000 pursuant to *quantum meruit* principles." Plaintiffs filed a motion to reconsider, vacate, and modify the order. In denying the motion, the court reiterated that the award "was granted pursuant to attorney Nicholas Lane's lien." It found that plaintiffs did not present newly discovered evidence, changes in the law, or errors in the court's previous application of the law. As such, they did not meet their burden on a motion to reconsider. The court also disagreed that an evidentiary hearing was required before resolving the lien claim. Plaintiffs and the Touhy firm filed a timely notice of appeal.

¶ 17                                    II. ANALYSIS

¶ 18     On appeal, the Touhy firm[1] contends that the trial court erred in granting Lane's petition

for fees because Lane did not have a valid attorney's lien under the Lien Act. This issue requires

us to interpret the Lien Act. Our primary objective in construing a statute is to give effect to

legislative intent, as indicated by the statutory language, given its plain and ordinary meaning.

*Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 22. "To determine the legislature's intent,

the court may properly consider not just the statute's language, but also the purpose and necessity

for the law, the evils sought to be remedied, and the goals to be achieved." *Crossroads Ford Truck*

*Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 45. Statutory interpretation of the Lien Act

presents a question of law that we review *de novo*. *Pedersen & Houpt, P.C. v. Main Street Village*

*West, Part 1, LLC*, 2012 IL App (1st) 112971, ¶ 15.

¶ 19     Section 1 of the Lien Act provides that:

    "Attorneys at law shall have a lien upon all claims, demands and causes of action ***

    which may be placed in their hands by their clients for suit or collection, or upon which

    suit or action has been instituted, for the amount of any fee which may have been agreed

    upon by and between such attorneys and their clients, or, in the absence of such agreement,

    for a reasonable fee, for the services of such suits, claims, demands or causes of action ***.

    ***

        To enforce such lien, such attorneys shall serve notice in writing *** upon the party

    against whom their clients may have such suits, claims or causes of action, claiming such

    lien and stating therein the interest they have in such suits, claims, demands or causes of

---

[1]Although plaintiffs and the Touhy firm filed a notice of appeal, only the Touhy firm filed a brief on appeal.

action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered \*\*\*. On petition filed by such attorneys or their clients any court of competent jurisdiction shall \*\*\* adjudicate the rights of the parties and enforce the lien." 770 ILCS 5/1 (West 2018).

"Since the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001). It is the attorney's burden to make a *prima facie* showing that he or she has complied with the Lien Act. *Moenning v. Union Pacific R Co.*, 2012 IL App (1st) 101866, ¶ 19.

¶ 20    The purpose of the Lien Act is to aid attorneys in the collection of their attorney fees. *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238, 241 (1961). To claim an effective lien, the attorney must have been hired by a client to assert a claim, and then the attorney must perfect the lien by serving notice as required by the Lien Act. *Philip Morris*, 198 Ill. 2d at 95 (citing *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 227 (1979)). A perfected lien attaches to any money or property recovered upon the disposition of the claim. *Moenning*, 2012 IL App (1st) 101866, ¶ 17. After serving notice of the lien, the attorney effectively becomes a joint claimant with his or her client in the proceeds of any settlement made by the client. *Id.* Since the Lien Act requires that the attorney be hired by a client to assert a claim, it follows that an attorney-client relationship must exist in the underlying case for an attorney to perfect a statutory lien. See *Rhoades*, 78 Ill. 2d at 227 (finding that the law firm could not perfect a statutory lien where the client discharged the firm four days before the firm served its lien notice and, as a result, "there was no longer an underlying attorney-client relationship").

¶ 21    The attorney-client relationship "is a voluntary, contractual relationship" formed when a

client authorizes the attorney to act on his or her behalf, and the attorney accepts that authorization. *People v. Simms*, 192 Ill. 2d 348, 382 (2000). The record indicates that after Leroy was injured, plaintiffs consulted with Mr. Touhy and the Touhy firm and signed a one-third contingent fee agreement for the firm to represent them. In 2015, the Touhy firm filed a complaint on behalf of plaintiffs, alleging negligence and loss of consortium. After the parties settled, the Touhy firm received its agreed-upon fee from the proceeds. This evidence supports the existence of an attorney-client relationship between the Touhy firm and plaintiffs, which Lane does not dispute. Instead, Lane claims that he was "retained as additional counsel by the Plaintiffs."

¶ 22    The record contains no retainer or offer by plaintiffs to retain Lane's services as their attorney. Moreover, plaintiffs stated in their affidavits that "Timothy Touhy and the Touhy law firm [have] been [their] attorney throughout this litigation." They never discussed representation or attorney fees with Lane. In his March 2019 letter to Lane, Mr. Touhy stated that he "verified with the clients that they have never authorized [Lane] to file an appearance and verified that they have never signed a written agreement in which they have consented—in writing—to pay [Lane] any kind of contingent fee."

¶ 23    According to Lane, however, when he met plaintiffs in September 2016, "it was made clear" that he "would be working on their case going forward." He also gave plaintiffs his business card, which identified him as an attorney and could be distinguished from the cards of other firms.

¶ 24    When parties dispute the formation of an attorney-client relationship, the trial court must make findings of fact to resolve the issue. *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 2015 IL App (1st) 131883, ¶ 10. Here, the court's minimal written order awarding attorney fees to Lane did not include findings or provide reasoning for the court's judgment. The trial court neither held an evidentiary hearing on Lane's petition nor heard oral argument. Under these circumstances, we

presume that the trial court "found all issues and controverted facts in favor of the prevailing party." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 596 (2008).

¶ 25 Since the trial court awarded fees to Lane pursuant to his attorney's lien, and an underlying attorney-client relationship is required to perfect the lien, we must presume that the trial court found the existence of an attorney-client relationship between plaintiffs and Lane. This court will not overturn a trial court's findings merely because it disagrees with the lower court or because it might have reached a different result. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214 (1995). We will disturb the trial court's findings only if they are against the manifest weight of the evidence. *Id.* at 215. A determination is against the manifest weight of the evidence if the opposite conclusion is apparent or when the trial court's findings are unreasonable, arbitrary, or not based on evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 26 An attorney-client relationship arises when a person consults with an attorney "for the purpose of securing that attorney's legal advice on a particular matter." *Simms*, 192 Ill. 2d at 383. The attorney-client relationship "requires the consent of both the attorney and client." *Id.* at 382. A formal or written agreement is not necessary to form the relationship. *Rubin & Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 38. However, the client must manifest an authorization that the attorney act on his or her behalf, and the attorney must accept the power to act on the client's behalf. *Simms*, 192 Ill. 2d at 382. A party alleging the existence of an attorney-client relationship must plead material facts showing that the client requested representation from the attorney and that the attorney agreed to act on the client's behalf. See *Torres v. Divis*, 144 Ill. App. 3d 958, 962-63 (1986) (affirming the dismissal of a complaint alleging the existence of an attorney-client relationship, despite the fact that the purported client believed the attorney represented him, because the client presented no facts showing that he requested the attorney's representation or

that the attorney agreed to represent him).

¶ 27    Lane has presented no facts showing that plaintiffs requested his representation in their case in addition to representation by the Touhy firm. Instead, the record shows that Lane worked on plaintiffs' case because of his connection with the firm. In 2015, Lane agreed to perform general work on Touhy firm cases at a rate of $50 an hour. He began working on plaintiffs' case in March of 2016, only after plaintiffs hired the Touhy firm to represent them and after the firm filed a complaint on their behalf. A September 2016 invoice from Lane to the firm requested payment for work he performed on plaintiffs' case, billed at a rate of $50 per hour.

¶ 28    Lane contends that he formed a relationship with plaintiffs at their first meeting because it was his "custom and practice" to state that he was not an employee of the Touhy firm, and "it was made clear" to plaintiffs that he would be working on their case. The attorney alone, however, cannot create an attorney-client relationship. *Simms*, 192 Ill. 2d at 382.

¶ 29    Furthermore, there is no evidence that plaintiffs consulted with Lane to secure his additional services or agreed to retain those services for a fee. Although plaintiffs knew that Lane was working on their case, the record contains no facts showing that they believed Lane's representation was separate from the Touhy firm's representation. While it would have been Lane's "custom and practice" to tell plaintiffs that he was not an attorney at the Touhy firm, he never stated that plaintiffs were so informed.

¶ 30    Given the circumstances in which plaintiffs first met Lane, it is far more likely that they believed Lane worked for the Touhy firm. This conclusion is supported by plaintiffs' statements that they believed Lane represented them "as an agent and fiduciary of the Touhy firm" and that they did not "employ or retain Nicholas Lane as an attorney to represent [them] in this litigation." Our analysis of the relationship "focuses on the client's viewpoint rather than that of the attorney."

- 10 -

*Rubin*, 2016 IL App (1st) 141315, ¶ 38. Since Lane alleged no facts showing that plaintiffs requested his representation in addition to the Touhy firm, he could not establish the existence of an attorney-client relationship with plaintiffs. See *Torres*, 144 Ill. App. 3d at 962-63.

¶ 31 Lane contends that he need not have been hired by plaintiffs in order to claim a valid attorney's lien, citing *In re Estate of McFadden*, 2011 IL App (2d) 101157. *McFadden*, however, does not support Lane's contention.

¶ 32 In *McFadden*, the injured minor's father and mother had divorced five years prior to the injury. *Id.* ¶ 2. The father retained the services of a law firm to pursue a tort action on the minor's behalf. *Id.* ¶ 4. The next day, the firm sent notices of attorney's liens by certified mail to the defendants. *Id.* ¶ 5. The firm then filed a complaint on behalf of the father individually and as next friend of the minor. *Id.* ¶ 6. The firm subsequently withdrew from the case because the trial court appointed the minor's mother as guardian of his estate with the authority to pursue claims on the minor's behalf. *Id.* ¶ 11. Attorneys hired by the mother obtained a settlement, and the mother filed a petition to adjudicate the lien claim of the father's firm. *Id.* ¶ 12.

¶ 33 The appellate court found that although the father was delinquent in his child support payments, and thus could not act as next friend when his complaint was filed, his standing to pursue the claim was not a requirement of the Lien Act. *Id.* ¶¶ 22-23, 25. Instead, attorney's liens are invalidated "only for failure to strictly follow the plain language" of the Lien Act. *Id.* ¶ 25. Therefore, although the law firm was hired by a party who could not assert a claim on the minor's behalf, that fact did not necessarily invalidate the firm's lien. *Id.*

¶ 34 Importantly, the minor's father in *McFadden* hired the law firm to pursue a claim, even though he was later found disqualified to bring a claim on the minor's behalf. As such, an attorney-client relationship was formed. See *Simms*, 192 Ill. 2d at 382 (noting that the attorney-client

relationship is "created by a retainer or an offer to retain or a fee paid" (internal quotation marks omitted)). In this case, there is no evidence that plaintiffs hired Lane to represent them. *McFadden* is distinguishable and does not conflict with our determination in this case.

¶ 35    Lane contends that even if his attorney's lien was invalid, he could still recover fees pursuant to an equitable lien or *quantum meruit* principles. To support his contention that he was entitled to attorney fees based on an equitable lien, Lane cites *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 175 (1998).

¶ 36    In *Lewsader*, the clients retained the attorney for his services in a personal injury matter. *Id.* at 172. He represented them in their case until his death five years later. *Id.* at 172-73. Even though the deceased attorney never perfected his lien, the court found that an equitable lien was created when the attorney executed the agreement to represent the clients in their personal injury case. *Id.* at 181. The court noted that, under Illinois common law, an attorney cannot acquire a lien on a judgment without the existence of an express agreement with the client. *Id.* at 179. Therefore, the court was "unwilling to go so far as to suggest that an equitable lien for attorney fees should be imposed by a court in the absence of an attorney-client agreement merely out of a sense of fairness." *Id.* While there need not be an express written agreement underlying an equitable lien, there must be some kind of attorney-client agreement. *Id. Lewsader* provides no support in this case where Lane had no agreement whatsoever with plaintiffs to retain his services.

¶ 37    Lane also argues that "an attorney without a valid written agreement is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge." In an action for attorney fees based on a *quantum meruit* theory, the attorney must show "(1) the existence of an attorney-client relationship, (2) the nature of the services rendered, (3) the amount of time expended, and (4) the result, if any, obtained for the client." *Wildman, Harrold, Allen & Dixon v.*

*Gaylord*, 317 Ill. App. 3d 590, 598 (2000).

¶ 38    We have already found that no attorney-client relationship existed between plaintiffs and Lane. Therefore, pursuant to *Wildman*, he cannot recover attorney fees based on *quantum meruit* principles. Even in the cases Lane cites as support, *Wegner v. Arnold*, 305 Ill. App. 3d 689, 691-92 (1999), and *Andrew W. Levenfeld & Associates, Ltd. v. O'Brien*, 2023 IL App (1st) 211638, ¶¶ 8-9, the attorneys who sought reasonable fees on a *quantum meruit* basis had executed written agreements with the clients and performed work on their cases before being discharged. Lane has provided no authority to support the awarding of attorney fees for work done, based on *quantum meruit*, without the existence of an underlying attorney-client relationship.

¶ 39    Since the record contains no evidence supporting the formation of an attorney-client relationship between plaintiffs and Lane, a finding that an attorney-client relationship existed is against the manifest weight of the evidence. Furthermore, with no underlying attorney-client relationship, Lane could not perfect his liens under the Lien Act. See *Rhoades*, 78 Ill. 2d at 227. Therefore, the trial court erred in granting Lane's lien petition and awarding him $55,000 in attorney fees, pursuant to the petition. We make no determination, however, as to whether Lane is entitled to compensation for his work based on another theory of recovery. The only question before us is whether Lane is entitled to *attorney fees* pursuant to an attorney's lien or, alternatively, based on *quantum meruit* principles or an equitable lien.

¶ 40                              III. CONCLUSION

¶ 41    For the foregoing reasons, we reverse the judgment of the trial court.

¶ 42    Reversed.

---

*Leroy v. ERA Valdivia Contractors, Inc.*, **2023 IL App (1st) 211323**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-L-11446; the Hon. James N. O'Hara, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Timothy J. Touhy, of Touhy Law Group, P.C., of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | John C. Ellis, David DeSchepper, and Sophia Maietta, of Ellis Legal, PC, of Chicago, for appellee. |

---