NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231041-U

NO. 4-23-1041

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| DEON LARAY HART, | ) | No. 17CF1699 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

_____

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court vacated the trial court's order dismissing defendant's postconviction petition at the first stage, finding an actual conflict of interest prevented the attorney who authored his petition from providing effective assistance of counsel.

¶ 2    In August 2017, defendant, Deon Laray Hart, and codefendant, Van Richardson, were both charged in a 19-count indictment related to the shooting of Lester Sanders. On defendant's motion, the trial court severed defendant's and Richardson's cases. At trial, defendant was found guilty of multiple counts of first degree murder (720 ILCS 5/9-1 (a)(l), (a)(2), (a)(3) (West 2016)), and the appellate court affirmed his convictions. Later, when defendant petitioned for postconviction relief, he received assistance from the attorney who had represented Richardson at his trial. The trial court denied defendant's petition, finding his claims were frivolous and patently without merit.

¶ 3 Defendant appeals, arguing he received ineffective assistance of counsel and the attorney who prepared his petition had a conflict of interest.

¶ 4 We vacate the trial court's order and remand with instructions that defendant be allowed to amend his postconviction petition or file a new petition.

¶ 5 I. BACKGROUND

¶ 6 In August 2017, the State filed a 19-count indictment against both defendant and codefendant Richardson, alleging they shot and killed Lester Sanders. Before trial, the State disclosed a written statement from Shaquaya Sago, who had been in a romantic relationship with Richardson for 10 years. Sago claimed Richardson told her that on the day of the shooting, defendant argued with someone, then "started shooting." She said Richardson reported, "After the shots, [defendant] got back in the truck and they left."

¶ 7 Defendant moved to sever his and Richardson's cases. Defendant argued (1) Richardson made certain statements implicating him in the shooting, (2) his and Richardson's statements during custodial interrogations were inconsistent, and (3) Richardson's defense was in conflict with his. The trial court granted the motion, finding Richardson's and defendant's defenses were likely to be antagonistic and he "would be prejudiced if he was forced to be tried in the same trial" as Richardson.

¶ 8 Richardson's trial took place first, and he was represented by attorney Kunal Kulkarni. During the trial, Marshayla Whitlock testified that on the day of the shooting , she saw defendant and Richardson fire their guns out of a van while she was in the backseat. Sago also testified that Richardson claimed defendant was responsible for the shooting. See *People v. Richardson*, 2022 IL App (2d) 210231-U, ¶ 45. Nevertheless, the jury found Richardson guilty of first degree murder.

¶ 9        At defendant's trial, Christina Sanders, the wife of the victim, testified that on the day of the shooting, she heard a commotion outside her family's apartment and saw a crowd of people. A neighbor's child walked outside, and Lester stepped out to tell him to go inside. Christina heard Lester say, " '[O]h, no, man, I'm talking to the kids.' " He began walking back inside, and she heard "a lot" of gunshots. Lester screamed, jerked forward, and lied down on his side. An autopsy later confirmed Lester died from a bullet wound to his back.

¶ 10        Whitlock, 19 years old at the time of defendant's trial, testified defendant got into an argument with someone at an apartment complex, and she, defendant, and Richardson, whom she knew only as "Bud," drove away in Richardson's van. They soon realized defendant's phone was missing, so they drove back to look for it. She testified someone shouted, "What," and Richardson and defendant started shooting. Whitlock testified she was in the backseat of the van and she saw Richardson in the driver's seat shooting out the window. She also saw defendant sitting on the window ledge of the passenger's side, shooting over the van's roof.

¶ 11        Whitlock admitted she had previously told police she did not know who was responsible for the shooting. She told the jury she "lied" to the police because she was scared, but her testimony on the stand was true. After cross-examining Whitlock, defense counsel showed the jury a video of that first police interview, in which she insisted she did not know the shooters. On redirect examination, the State showed the jury a video of Whitlock's second interview with police, in which she provided an account that more closely matched her testimony at trial. Defense counsel did not object to the video. Later, defense counsel and the State stipulated to a reading of portions of Whitlock's testimony from Richardson's trial, including her statement that she met with defendant and Richardson the night of the shooting and both men fired shots out of the car for two or three minutes.

¶ 12 Multiple Rockford police officers testified to the condition of the crime scene. They located a green Mitsubishi SUV nearby, owned by Sago. Inside the vehicle, they found utility bills addressed to Richardson and insurance and registration paperwork in Sago's name. On the vehicle's roof, they found a .40-caliber cartridge case. Sago testified Richardson was using the vehicle on the day of the murder.

¶ 13 During closing arguments, defense counsel argued none of the physical evidence connected defendant to the shooting and the State relied solely on witness testimony to show defendant was involved. Defense counsel noted the physical evidence, especially the documents in the SUV, implicated only Richardson, but not defendant.

¶ 14 The jury found defendant guilty of first degree murder. 720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2016). The jury further found defendant personally discharged a firearm during the commission of the offense and he personally discharged the firearm that caused Lester's death. At sentencing, the trial court sentenced defendant to 40 years' imprisonment for the murder. The court also imposed a 25-year firearm enhancement because of the finding defendant personally discharged the firearm causing Lester's death.

¶ 15 On appeal, defendant argued the State misled the grand jury, he and Richardson were similarly situated but received disparate sentences, and the State did not prove defendant personally fired the shot that killed Lester. *People v. Hart*, 2022 IL App (2d) 200702-U, ¶ 3. The Second District rejected defendant's grand jury and disparate sentences claims, so it upheld defendant's conviction and 40-year sentence. *Id.* ¶¶ 4, 46, 54. The State conceded it did not prove defendant fired the fatal shot, so the court replaced defendant's 25-year firearm enhancement with a 20-year firearm enhancement. *Id.* ¶ 57.

¶ 16　　　　　On May 30, 2023, defendant filed the petition for postconviction relief that is the subject of this appeal. The petition states defendant brought his motion "*pro se*," and it bears only defendant's signature. Attached to the petition is an affidavit, signed by defendant, supporting the petition under penalty of perjury, pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2022)). The petition first argues defendant's appellate counsel provided ineffective assistance, although it does not specify appellate counsel's alleged failure. Citing the appellate court's decision in *People v. Mauro*, 362 Ill. App. 3d 440 (2005), the petition "adopts" the statement "any potential forfeiture, waiver, or procedural default of any of the issues raised in the petition stem from ineffectiveness assistance of trial and appellate counsel." Next, the petition argues defendant's trial counsel was ineffective in failing to raise a speedy trial objection. Citing section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2022)), the petition claims defendant's trial began over 120 days after a trial demand and the delay was unreasonable.

¶ 17　　　　　At a June 6, 2023, hearing, the trial court acknowledged receipt of defendant's postconviction petition. Defendant was not present in the courtroom, but Kulkarni, Richardson's trial attorney, was. The court asked Kulkarni what his relationship to defendant's case was. The following exchange took place:

> "MR. KULKARNI: *** I was contacted by [defendant's] family regarding the filing of a motion. I emphasized to them that I did not believe I would be in a position to represent him in any sort of postconviction because of my own relationship to the case and the fact that I represented the co-defendant. I did, however, make sure, because I did believe there were deadlines, that there was the filing with the clerk for [defendant] is what I can describe my role as.

THE COURT: Well, let me just be clear, you don't, as of today, have an appearance on file?

MR. KULKARNI: No. No, Your Honor.

THE COURT: But are you—

MR. KULKARNI: And I don't intend to.

THE COURT:—in an offhand way telling me that you authored the pleading that he—

MR. KULKARNI: Yes, I did, because I believed—the family contacted me, I believed there were deadlines, and I told them I would make sure officially that the filing was within those deadlines and that is, in effect, my role here.

THE COURT: So you, as an attorney, authored a pleading for a defendant—

MR. KULKARNI: I—

THE COURT:—and then had him swear to the pleading that you wrote over his own signature?

MR. KULKARNI: Judge, in effect, I am not taking any way, shape, or form regarding the pleading. All I can say is [defendant] did contact me, wanted to make—and I did explain that there are deadlines, and just as a courtesy I did have the pleading on file for [defendant]. I explained to him, I was quite clear, I do not believe I can in any way, shape, or form litigate the claims. But as a courtesy, I did make sure it was on file for him. That's the way I would describe my role.

THE COURT: And who signed the pleading?

MR. KULKARNI: I believe it was [defendant], Your Honor.

THE COURT: From [the Department of Corrections]?

MR. KULKARNI: I believe so. Yes, Your Honor. He has been in touch with me. He's written to me a few times.

THE COURT: So, just to be clear, you have not—so effectively as a friend of the defendant and not as the attorney, technically speaking, for the defendant, because you're not—

MR. KULKARNI: Yes. I'm not the—

THE COURT:—the attorney for the defendant—

MR. KULKARNI: Absolutely not.

THE COURT:—at this point in time, as a friend of the defendant you filed a pleading on his behalf which he has adopted by signing his name to your pleading?

MR. KULKARNI: Essentially. It's rather an unusual situation, but yes.

THE COURT: All right. Well, I acknowledge receipt of the pleading, and to the extent that, at least with clarification now from Mr. Kulkarni, that it's a pleading authorized or written up by an attorney, however, by that attorney in his capacity as a friend of [defendant] or [defendant's] family. It's still a first stage post-conviction, from the Court's perspective, with Mr. Kulkarni on the record today confirming that he has not entered an appearance in 17 CF 1699, and will not enter an appearance in 17 CF 16—1669 (sic), which leaves this in first stage post-conviction status at this point in time. So I will do the best I can to adjudicate the petition authored by Mr. Kulkarni on [defendant's] behalf as a non-lawyer for [defendant] and have a disposition within 90 days of 05/30/2023."

¶ 18　　　　A handwritten case management order dated June 6, 2023, stated, "Atty Kulkarni showed up w/ no appearance on file + agreed that he *wrote* the Post Conviction for [defendant.]" The order further stated, "Atty Kulkarni stated he has not + will not enter an appearance on this case."

¶ 19　　　　On July 13, 2023, the trial court dismissed defendant's postconviction petition as "frivolous and patently without merit." In its written order, the court reviewed the various delays between defendant's arrest and trial. Those delays included defendant's motion to substitute judge, defendant's motion and amended motion to sever his case from Richardson's, defense counsel's request for time to review discovery and to investigate, defendant's motion to suppress certain evidence, and defendant's motion to dismiss, among others. The court found these delays tolled the speedy trial timeline. The court rejected defendant's speedy trial claim, finding defendant failed to provide his own calculation and analysis of which delays were attributable to the State and he failed to affirmatively establish a speedy trial violation. The court also rejected defendant's ineffective assistance of appellate counsel claim, finding defendant did not specify any failing of any individual appellate counsel.

¶ 20　　　　Defendant filed a motion for leave to file a late notice of appeal, which we allowed. This appeal followed. The Office of the State Appellate Defender was appointed to represent defendant on appeal.

¶ 21　　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　　Defendant seeks leave to file an amended petition for postconviction relief. He contends Kulkarni provided ineffective assistance of counsel because he suffered from a conflict of interest and because Kulkarni failed to raise certain meritorious claims. Because we agree with

defendant's conflict of interest claim, we need not decide whether he had other meritorious claims Kulkarni failed to raise.

¶ 23        The Post-Conviction Hearing Act ("Act") allows prisoners to collaterally attack their convictions by alleging "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2022); *People v Griffin*, 178 Ill. 2d 65, 72-73 (1997). Proceedings under the Act have three stages. First, the trial court reviews the petition, taking the allegations as true, to determine whether the petition "is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022); See *People v. Tate*, 2012 IL 112214, ¶ 9. If it is, the trial court dismisses the petition. *Id.* Otherwise, it moves to the second stage, where the State responds to the petition (725 ILCS 5/122-5 (West 2022)) and a court may appoint an attorney for an indigent defendant (725 ILCS 5/122-4 (West 2022)). *Tate*, 2012 IL 112214, ¶ 9. If the defendant has made a "substantial showing of a constitutional violation," the petition advances to the third stage. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001) (citing *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). If not, the case is dismissed. *Tate*, 2012 IL 112214, ¶ 10. In the third stage, the trial court holds an evidentiary hearing on the petitioner's claim. *Id.*

¶ 24        Here, the trial court determined defendant's petition was "frivolous or patently without merit," so it dismissed the petition at the first stage. A petition is frivolous or patently without merit if it "has no arguable basis either in law or in fact." *Id.* ¶ 9. At this stage, most petitions are prepared by self-represented defendants, so "the threshold for survival" is "low." *Id.* "The allegations of the petition, taken as true and liberally construed, need only present the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 25　　　　Here, defendant does not directly challenge the merits of the trial court's dismissal of his petition. Instead, he alleges he was denied his right to counsel because Kulkarni suffered from a conflict of interest and ineffectively raised only frivolous claims instead of other meritorious ones.

¶ 26　　　　Before we determine whether defendant received ineffective assistance of counsel, however, we must first consider whether Kulkarni and defendant had an attorney-client relationship, because the State denies this. "The attorney-client relationship 'is a voluntary, contractual relationship' formed when a client authorizes the attorney to act on his or her behalf, and the attorney accepts that authorization." *Leroy v. ERA Valdivia Contractors, Inc.*, 2023 IL App (1st) 211323, ¶ 21 (quoting *People v. Simms*, 192 Ill. 2d 348, 382 (2000)). "To form an attorney-client relationship, both the attorney and the client must consent to its formation." *Meriturn Partners, LLC v. Banner and Witcoff, Ltd.*, 2015 IL App (1st) 131883, ¶ 10. "Thus, the client must explicitly authorize the attorney to work on his behalf and the attorney must indicate an acceptance of that authority to work on the client's behalf in order to establish an attorney-client relationship." *Kensington's Wine Auctioneers and Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 13 (2009). When a trial court makes findings of fact regarding an attorney-client relationship, "[w]e will disturb the trial court's findings only if they are against the manifest weight of the evidence." *Leroy*, 2023 IL App (1st) 211323, ¶ 25. "A determination is against the manifest weight of the evidence if the opposite conclusion is apparent or when the trial court's findings are unreasonable, arbitrary, or not based on evidence." *Id.* However, whether an attorney-client relationship exists is a question of law, which we review *de novo*. See *Meriturn*, 2015 IL App (1st) 131883, ¶ 10.

¶ 27    The State argues Kulkarni and defendant did not have an attorney-client relationship, so Kulkarni could not have provided ineffective assistance of counsel. At the June 6, 2023, hearing, Kulkarni told the trial court he was not representing defendant. Kulkarni never entered an appearance as attorney of record. The court's written order said, "Atty Kulkarni stated he has not + will not enter an appearance on this case." The State claims Kulkarni simply provided defendant with a pleading on which defendant could base his own petition, like a legal aid clinic distributing form pleadings. Therefore, the State claims Kulkarni was not representing defendant.

¶ 28    The State's comparison to a clinic providing blank form pleadings mischaracterizes Kulkarni's involvement. He did not simply give defendant a standardized form with blank spaces to be filled in, such as those approved by the Illinois Supreme Court Commission on Access to Justice. See https://www.illinoiscourts.gov/documents-and-forms/approved-forms/. Instead, Kulkarni apparently consulted with defendant's family, had some written correspondence with defendant, gave advice regarding a filing deadline, and, most importantly, authored defendant's petition for him. The trial court asked Kulkarni if he was, "in an offhand way telling [the court] that [he] authored the pleading," and Kulkarni confirmed, "Yes, [he] did." The court asked Kulkarni, "[A]s a friend of the defendant you filed a pleading on his behalf which he has adopted by signing his name to *your pleading*?" (Emphasis added.) Kulkarni agreed, "Essentially. It's rather an unusual situation, but yes." The court said that defendant's petition was "written up" or "authored" by Kulkarni, and Kulkarni voiced no disagreement with this characterization. The trial court's written order acknowledges, "Atty Kulkarni showed up w/ no appearance on file + agreed that he *wrote* the Post Conviction for [defendant.]" (Emphasis in original.)

¶ 29    Defendant contends he and Kulkarni entered a limited-scope representation agreement, and, based on the limited information available in the record, we agree. Illinois Rule

of Professional Conduct 1.2(c) states, "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." Ill. R. Prof'l Conduct (2010) R. 1.2(c) (eff. Jan. 1, 2016). Illinois Supreme Court Rule 137(e) (eff. Jan.1, 2018) states:

> "An attorney may assist a self-represented person in drafting or reviewing a pleading, motion, or other document without making a general or limited scope appearance. Such assistance does not constitute either a general or limited scope appearance by the attorney. The self-represented person shall sign the pleading, motion, or other paper."

An attorney and client may agree to "limit the attorney's employment to the drafting of pleadings, allowing the client to make other arrangements for the handling of the case through the pleading and trial stages." ISBA Op. No. 849 (December 9, 1983); See *Board Of Managers of Eleventh Street Loftominium Ass'n v. Wabash Loftominium, L.L.C.*, 376 Ill. App. 3d 185, 194 (2007) (relying on an Illinois State Bar Association advisory opinion as persuasive authority). Kulkarni admitted he wrote defendant's postconviction petition, and drafting pleadings is undoubtably a form of legal services. See *Webb v. Holmes*, 2018 IL App (3d) 170167, ¶¶ 12-13. Although the State is correct that Kulkarni did not represent defendant at the hearing on June 6, 2023, Kulkarni nevertheless entered an attorney-client relationship with defendant.

¶ 30        We further note, at the first stage of a postconviction petition, the trial court decides whether to dismiss or advance the defendant's claim based only on the defendant's written petition itself. At the first stage, the court reviews the petition, taking the allegations as true, to determine whether the petition "is frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022); See *Tate*, 2012 IL 112214, ¶ 9. Here, as is typically the case, the court heard no oral

arguments on defendant's claim nor held any evidentiary hearing at the first stage. Although Kulkarni did not enter an appearance, the petition he drafted provided the sole basis for the court's decision. Especially in this context, it is undeniable that Kulkarni provided legal assistance.

¶ 31 Alternatively, the State contends defendant's postconviction petition itself forecloses any possibility that Kulkarni acted as defendant's attorney. The petition stated defendant was proceeding *pro se*. Defendant also signed an affidavit affirming, under oath, the veracity of his petition. See 735 ILCS 5/1-109 (West 2022). The State contends that if defendant now claims Kulkarni represented him, defendant effectively lied under oath, thereby committing perjury. See 720 ILCS 5/32-2(a) (West 2022) ("A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law the oath or affirmation is required, he or she makes a false statement, material to the issue or point in question, knowing the statement is false.") The State also claims that if the basis of defendant's petition was false, the petition is invalid and his entire claim is undermined.

¶ 32 The State is wrong. As explained above, defendant could receive assistance from Kulkarni with the preparation of his petition but still file that petition *pro se* and represent himself in court. There is no "false statement" here that could constitute perjury. Indeed, defendant's statement that he was proceeding *pro se* was true. The State certainly has not demonstrated defendant believed, at the time of filing, that Kulkarni's assistance in preparing the petition meant he was not proceeding *pro se*, which the State must show to support an allegation defendant "knowingly" made a false statement. Nor has the State explained how defendant's statement that he was proceeding *pro se* was in any way "material to the issue or point in question." *Id.* We are entirely unpersuaded by the State's reckless allegation of perjury.

¶ 33 Having determined Kulkarni acted as defendant's attorney by authoring his postconviction petition, we next consider whether Kulkarni's assistance requires reversal. "The right to counsel in postconviction proceedings is wholly statutory." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007), as modified on denial of reh'g (May 27, 2008); see 725 ILCS 5/122-4 (West Supp. 2023). The Act requires only a " 'reasonable' level of assistance." *Perkins*, 229 Ill. 2d at 42. Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) specifies the duties of an attorney who amends a petition filed by the petitioner *pro se*. Rule 651(c) requires the attorney to "(1) consult with the petitioner either by mail or in person to ascertain the contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions." *Perkins*, 229 Ill. 2d at 42. However, these duties are not at issue in a case such as this, where an attorney drafted the petition. See *People v. Bennett*, 394 Ill. App. 3d 350, 354 (2009) ("Certainly, the amendment duty of Rule 651(c) is, by its own terms, inapplicable when counsel drafted the original petition.")

¶ 34 Nevertheless, a privately retained attorney still must provide "reasonable assistance," including at the first stage of postconviction proceedings. See *People v. Cotto*, 2016 IL 119006, ¶ 32. Moreover, "[t]he right to reasonable assistance of postconviction counsel includes the correlative right to conflict-free representation." *People v. Hardin*, 217 Ill. 2d 289, 300 (2005). Postconviction counsel "must be as conflict-free as trial counsel." *Id.* We review whether postconviction counsel provided reasonable assistance *de novo. People v. Jones*, 2017 IL App (4th) 140594, ¶ 31; *People v. Bell*, 2014 IL App (3d) 120637, ¶ 9.

¶ 35 Illinois courts recognize "two types of conflict of interest—actual and *per se.*" *People v. Yost*, 2021 IL 126187, ¶ 37. The supreme court has "explained that defense counsel's

- 14 -

association with or connection to the victim, the prosecution, or a prosecution witness may have a subtle or subliminal effect on counsel's performance that is difficult to detect and demonstrate, which justifies application of the *per se* conflict rule." *Id.* ¶ 40. In such cases, defendant need not show actual prejudice. *People v. Hernandez*, 231 Ill. 2d 134, 143 (2008). If the defendant did not waive the right to conflict-free representation, a *per se* conflict requires "automatic reversal." *Id.* Here, defendant does not allege any *per se* conflict.

¶ 36 Instead, defendant argues Kulkarni's prior representation of Richardson resulted in an actual conflict of interest that warrants reversal. "[T]o prevail on a claim of ineffective assistance of counsel because of representation of criminal codefendants by a single attorney, a defendant must show an 'actual conflict of interest manifested' " in the proceedings. *People v. Vriner*, 74 Ill. 2d 329, 341 (1978) (quoting *People v. Berland*, 74 Ill. 2d 286, 299-300 (1978)). To establish an actual conflict, "[t]he defendant is required to identify a specific deficiency in his counsel's strategy, tactics, or decision making that is attributable to the alleged conflict." *Yost*, 2021 IL 126187, ¶ 38. "Speculative allegations and conclusory statements are insufficient to establish an actual conflict of interest." *Id.*

¶ 37 Defendant contends a conflict of interest existed because Kulkarni had represented codefendant Richardson in a murder trial concerning the same shooting that provided the basis for defendant's conviction. Kulkarni himself acknowledged a conflict. Kulkarni told the trial court he "did not believe [he] would be in a position to represent [defendant] in any sort of [postconviction proceedings] because of [his] own relationship to the case and the fact that [he] represented [Richardson]." Defendant cites *Holloway v. Arkansas*, 435 U.S. 475, 485 (1978), and *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980), to show that attorneys are in the best position to determine

whether they have a conflict of interest. Defendant contends Kulkarni's own statement demonstrates a conflict of interest prevented him from providing adequate representation.

¶ 38 Defendant also claims Kulkarni violated the Illinois Rules of Professional Conduct of 2010. Rule 1.7(a) states:

"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, *a former client* or a third person or by a personal interest of the lawyer." (Emphasis added.) Ill. R. Prof'l Conduct (2010) R. 1.7(a) (eff. Jan. 1, 2010).

Before defendant's trial, the trial court severed defendant's and Richardson's trials, finding a joint trial would be unfair. During Richardson's trial, Sago's statement to police, in which she claimed Richardson blamed defendant for the shooting, was admitted into evidence. See *Richardson*, 2022 IL App (2d) 210231-U, ¶ 45. On appeal, Richardson further argued defendant was responsible for the shooting and the State failed to prove Richardson, rather than defendant, fired any shots. *Id.* ¶ 77. During defendant's trial, defense counsel argued the physical evidence may have implicated Richardson, but not defendant. Similarly, defendant now claims that emphasizing Richardson's responsibility for the shooting could have strengthened his own argument, but Kulkarni's responsibilities and loyalty to Richardson limited his ability to adequately assist defendant.

¶ 39    Regarding the "specific deficiency in his counsel's strategy, tactics, or decision making that is attributable to the alleged conflict" (*Yost*, 2021 IL 126187, ¶ 38), defendant claims Kulkarni overlooked potentially meritorious arguments that would have required him to argue Richardson was responsible for the shooting. For example, defendant contends Kulkarni should have argued defendant's appellate counsel unreasonably failed to argue his trial counsel should have challenged the admission of Whitlock's prior statements into evidence. At trial, Whitlock provided key testimony regarding her observations of the shooting. She was impeached with a video of her prior statement to police that she did not know who was responsible for the shooting. On redirect examination, the State introduced evidence of another previous statement that was consistent with Whitlock's trial testimony. The parties also stipulated to a reading of Whitlock's testimony from Richardson's trial. Defendant argues his trial counsel should have objected to Whitlock's prior consistent statements as inadmissible hearsay or, at the very least, requested a limiting instruction informing the jury they should not consider Whitlock's prior statements as substantive evidence. See Ill. R. Evid. 802 (eff. Jan. 1, 2011); see also Ill. R. Evid. 613(c) (eff. Sept. 17, 2019); *People v. Smith*, 362 Ill. App. 3d 1062, 1083 (2005). Defendant contends Kulkarni should have argued his trial attorney and appellate counsel provided ineffective assistance of counsel by failing to challenge Whitlock's statements. See *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984); see also *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). He contends this claim would have, at least, satisfied the low bar of stating the gist of a claim, which is all that is required at the first stage of postconviction review. *Brown*, 236 Ill. 2d at 184.

¶ 40    However, defendant contends these arguments would have required Kulkarni to show defendant suffered prejudice and Kulkarni could have claimed prejudice by challenging the credibility of the trial evidence implicating defendant and casting the blame on Richardson.

Kulkarni could have written a petition that emphasized the evidence connecting Richardson to the shooting, including the SUV and Whitlock's testimony. Instead, defendant claims Kulkarni's loyalty to Richardson led him to overlook any argument involving Richardson and focus on a procedural claim like the speedy trial argument, which was frivolous and meritless.

¶ 41 The State makes no effort to refute defendant's arguments regarding the defects in Kulkarni's decision-making. Nor does the State raise any further arguments in response to defendant's claims. For example, the State does not contend defendant waived any potential conflict of interest. Instead, the State relies solely on its denial of any attorney-client relationship. As explained above, the State is wrong.

¶ 42 We find defendant has identified a deficiency in Kulkarni's decision-making sufficient to demonstrate an actual conflict of interest. Kulkarni drafted a petition for defendant that avoided any engagement with the evidence at trial or with the strength of evidence showing defendant was responsible for the murder. Instead, Kulkarni's petition asserted a vague claim of ineffective assistance of appellate counsel and a purely procedural speedy trial violation. We make no findings regarding the merits of other potential claims defendant could have brought, including defendant's claim regarding Whitlock's prior statements. But the arguments Kulkarni raised in the petition were poorly developed, and the trial court found them "frivolous and patently without merit." Given the clear impropriety of Kulkarni authoring defendant's petition and the lack of opposing arguments from the State on appeal, we agree with defendant that Kulkarni's prior representation of Richardson caused him to draft a postconviction petition with undeveloped and frivolous procedural arguments at the expense of other potentially stronger claims. This is sufficient to show an actual conflict of interest, so we vacate the trial court's order dismissing

defendant's petition at the first stage, and we remand to allow defendant to file an amended petition, either *pro se* or with the assistance of retained counsel.

¶ 43                                         III. CONCLUSION

¶ 44            For the reasons stated, we vacate the trial court's order dismissing defendant's postconviction petition and remand for further proceedings.

¶ 45            Order vacated; cause remanded.